ROMONA JANINE WAFER
1701 Ellis Lake Drive, Suite 60
Marysville, California 95901
Phone Number (562) 330-9982
Fax Number (530) 466-3121
Email Address Janine_wafer@yahoo.com

PER SE LITIGANT



FILED

NOV 19 2025

CLERK, U.S. DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
BY _____
            DEPUTY CLERK

UNITED STATE DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROMONA JANINE WAFER,<br><br>  Plaintiff,<br><br>vs.<br><br>LAKESIDE VILLAGE APARTMENTS of 1701 Ellis Lake Drive, Marysville, Ca 95901 ("Lakeside"); LA PALOMA APARTMENTS LLC, JMAKK LAKESIDE LLC, and MDH LAKESIDE LLC, collectively OWNERS of LAKESIDE; WESTCAL MANAGEMENT, property management for Lakeside; and WESTCAL MANAGEMENT Regional Manager of Lakeside CHLOE WILKINSON,<br><br>  Defendant(s) | Case No 2:25-CV-3355 DAD CKD PS<br><br>(42 U.S.C. § 3601 et seq.; Cal. Gov't Code § 12927 et seq.; ADA Cal. Civil Code § 52 et. Seq; Cal. Civil Code Section 1710(2); and Cal. Gov't Code § 12955 |

## I.     NATURE OF THE ACTION

1.  Plaintiff Romona Janine Wafer sues the owners and management of the Lakeside Village Apartments in Marysville alleging discrimination based on disability, race, denial of request for reasonable accommodation/modification, and retaliation for exercising civil rights in violation of federal and state fair housing laws and Americans with Disabilities Act of 1990.

///

## II. JURISDICTION AND VENUE

2. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 42 U.S.C. §§ 3613 and 12188(a), Pursuant to 28 U.S.C. §1367, this Court has supplemental jurisdiction over plaintiff's state law claims because they arise out of the common nucleus of operative facts that form part of the same case or controversy under Article III of the United States Constitution.

3. Venue is proper in the Eastern District of California because the claims alleged in this complaint arose in Yuba County.

## III. THE PARTIES AND THE SUBJECT PROPERTY

4. I, Romona Janine Wafer 64 (hereinafter "Plaintiff", "me", "I"), am an African-American woman and a person with disabilities as defined under state and federal laws. I retired in 2016. My source of income is Social Security Disability Income (SSDI) payments. I am also the recipient of a Section 8 Housing Choice Voucher which subsidizes a portion of my monthly rent. As alleged below, Defendants injured me during my efforts to receive a reasonable accommodation at the Lakeside Village Apartments, located at 1701 Ellis Lake Drive, Apt. Unit 60 in Marysville, California 95901 ("Lakeside Apartments" or "Lakeside").

5. Lakeside Village Apartments are dwellings subject to state and federal housing laws.

6. Defendant LAKESIDE VILLAGE APARTMENTS, a limited California liability Company.

7. Defendants LA PALOMA APARTMENTS LLC, a California limited liability company, JMAKK Lakeside LLC, a California limited liability company, and MDH Lakeside LLC (collectively referred to as "OWNERS") are officially recorded as the owners of the Defendant Lakeside Village Apartments in Marysville, California.

8. Defendant WESTCAL Management ("WESTCAL") is a corporation conducting business in northern California since 1992. WESTCAL operates and manages Lakeside Village Apartments on behalf of OWNERS ("PALOMA APARTMENTS, LLC, JMAKK Lakeside, LLC,

and MDH Lakeside LLC") which employed and employs defendant Chloe Wilkinson as Lakeside Village Apartments Regional Manager.

9. Each defendant is directly or vicariously liable for the unlawful housing practices alleged in this complaint under the following theories:

   a. For the defendant's own conduct;
   b. For failing to take prompt action to correct and end an unlawful housing practice by the defendant's employee or agent, where the defendant knew or should have known of the unlawful conduct;
   c. Failing to take prompt action to correct and end an unlawful housing practice by a third-party, where the defendant knew or should have known of the unlawful conduct and had the power to correct it; and,
   d. Each defendant is also vicariously liable for unlawful conduct by the defendant's agent or employee, regardless of whether the defendant knew or should have known of the conduct that resulted in the unlawful housing practice. Consistent with agency law.

## IV.   FACTUAL ALLEGATIONS

10. I, Romona Janine Wafer, Plaintiff, am currently a tenant at Lakeside Village Apartments, Unit 60 on the ground floor, located in Marysville, California. I am a tenant in good standing and had no issues with Lakeside Village Apartments until I requested a reasonable modification to install a garden fence.

11. In and around November 2024, I thought of putting in place a garden fence around the perimeters of the garden area designated as a buffer zone between my personal patio space and the community causeway or thoroughfare parallel or adjacent to Ellis Lake, a public lake often trafficked by tenants' guests, stray animals, wandering citizens seeking to fish or stroll about Ellis Lake, including, but not limited to the homeless community often in the pursuit of shelter, food, and other basic needs or resources.

///

12. As I explained to defendants, on more than one occasion, I have had the unfortunate experience of homeless people and stray animals wandering off the community causeway and/or thoroughfare into the garden buffer zone leading directly to my apartment patio space, causing me continual anxiety along with health, welfare, and safety concerns.

13. On more than one occasion, I have had to take one or both of my emotional support animals ("support dogs") outdoors in the garden area at 3:00 am and/or 4:00 am in the morning in response to their gestures to be let outdoors to relieve themselves prior to my taking them on their daily morning walks between the hours of 9 a.m. and 11:30 a.m.

14. On those afore-mentioned occasions, I suffered much anxiety for fear of again encountering roaming strangers or stray animals on my back patio and in the garden buffer space located between my patio and the community thoroughfare or causeway. Because my unit is on the ground floor, I am vulnerable to any harmful element or elements that may be lurking at any time of the morning or evening about the causeway and Ellis Lake.

15. In November of 2024, I made a verbal request for reasonable accommodation/ modification to place a fence about the perimeters of the garden buffer zone located directly between my patio area and the community thoroughfare. I explained to defendants how the fence would provide me with a safer and comforting outdoor space whenever it was necessary for me to facilitate my support dogs' needs to relieve themselves during those very early or late hours without requiring me to venture too far beyond my back door during those unsafe hours. In addition, it would guard me against coming face to face with any roaming stranger coming surprisingly too close for comfort at any given time threatening my safety and exacerbating my disability. However, defendants exhibited no sense of responsibility to comply with my request for reasonable accommodation/modification.

16. For the past nine months or so, I have attempted to meaningfully engage in communications with OWNERS' property management (WestCal Management) and their counsel (PKS Law Group) for reasonable accommodation/modification. Although Lakeside Village Apartments initially agreed to consider my reasonable accommodation/modification request,

Lakeside Village Apartments and WestCal Management have now effectively denied my reasonable accommodation/modification request having failed to engage in a timely interactive process in good faith.

17. As previously stated, in November of 2024, I made an oral request for the modification directly to onsite property management. After no response, I followed up with the onsite community manager in January 2025 via email. I received an email response from WestCal property management on January 23, 2025, nearly two months after my first oral request, from the offsite WestCal Regional Manager Chloe Wilkinson stating the following:

> "… adding an additional fence yard is a modification to the property and not the interior of the unit which would effect our business. It would be an enclosure for her dog which means if it breaks out, it could harm someone, and we'd be responsible for allowing it. We'd also likely have a big insurance problem and would not be allowed to do that, and if we allow one resident to do it, we would have to allow everyone else that asks to do the same thing and we'd have homemade back yard fences all over the place which would create landscape issues, etc."

18. That same day, I responded to onsite Westcal Community Manager Neda Aslanpour that their reasoning does not align with Fair Housing laws and requested that Lakeside Apartments reconsider their decision. I further explained the nexus between my disability and the requested reasonable modification.

19. On February 7, 2025, I was asked to fill out WestCal Management's official request form for a reasonable accommodation/modification, nearly three months after my first oral request in November 2024. I promptly filled out the requested paperwork and submitted the "Request for Reasonable Accommodation / Modification form" on February 7, 2025.

20. After I didn't hear anything from WestCal Management on February 25, 2025, Ms. Wilkinson responded to my follow-up email and informed me that although Lakeside Village Apartments <u>could not</u> approve the specific requested garden gate or materials that I had suggested, but did approve the request. I was further informed that I would have to install an

approved fence at my own expense. Thereafter, WestCal Management set forth various requirements for me to follow.

21. I promptly followed up and obtained a quote, as requested by Lakeside Village Apartments. On February 27, 2025, I informed Ms. Wilkinson that I had secured a quote and that I needed to follow up with the contractor by March 5, 2025, or I would lose a significant discount on the installation costs and reminded Ms. Wilkinson that my request was time sensitive.

22. There were some back and forth emails between myself and Ms. Wilkinson about what other information Lakeside Village Apartments would need to move forward with my request for reasonable accommodation/modification between February 27 – February 28, 2025.

23. On March 3, 2025, I then reached out to Ms. Wilkinson to confirm that Lakeside Village Apartments intended to move forward with my requested reasonable accommodation/modification so that I was able to secure the installation discount from the contractor. Unfortunately, I did not receive a response from WestCal Management until March 11, 2025, regarding my reasonable accommodation/modification request.

24. Between March 3 and March 11, 2025, I continued to inform Ms. Wilkinson about the ongoing safety concerns I was having during this time and how these incidents continued to impact my disabilities. In Ms. Wilkinson's March 11, 2025, email response, she informed me that due to building code restrictions, Lakeside Village Apartments would not be able to proceed with my requested reasonable accommodation/modification. In this same email, Ms. Wilkinson suggested other alternatives for my consideration. However, none of WestCal Management's suggested alternatives addressed my disability-related needs.

25. On March 12, 2025, I reached out to Marysville Code Enforcement and asked if my proposed reasonable accommodation/modification violated any local zoning or code enforcement regulations. On March 25, 2025, Ellen Culver, Planning Technician with the City of Marysville, confirmed that the reasonable accommodation/modification I requested originally did not violate any local zoning or code enforcement regulations. Ms. Culver responded that their policy for fencing in the area allows fencing if it is shorter than 3 ½ feet.

26. On April 4, 2025, I sent Ms. Wilkinson a letter and an email with the information I had received from the City of Marysville to inform WestCal Management that my requested modification did not violate any local zoning or code enforcement regulations. I further informed Ms. Wilkinson in the same email that her suggested alternatives did not address my disability-related needs.

27. On April 10, Ms. Wilkinson responded that she was reviewing the information I had sent her via email with PKS Law Group and that someone would be in touch with me soon.

28. However, by April 17, I still had not heard anything from Ms. Wilkinson or PKS Law Group and so I followed up with Ms. Wilkinson to see if she needed any additional information from me.

29. I did not receive a response from Ms. Wilkinson until April 26, 2025, and again, Ms. Wilkinson failed to provide me with any additional information about my request for reasonable accommodation/modification beyond that WestCal Management was reviewing my request with PKS Law Group.

30. On April 30, 2025, I followed up with Ms. Wilkinson and requested a meeting, expressing my deep concern with the delays in processing my approved reasonable accommodation/modification request and hopefully facilitating forward movement with my request. During this period, I received a letter from PKS Law Group dated April 28, 2025, requesting additional information about how my requested reasonable accommodation/modification was related to my disability. PKS Law Group requested that I provide them with this information by May 12, 2025, so that they could continue to engage in the interactive process with me.

31. The April 28, 2025 letter came nearly five months after my initial verbal request for a reasonable accommodation/modification and after WestCal Management had already approved my request. It was represented to me that we were working together to come up with an acceptable fence given defendants' requests for additional information about the requested accommodation/modification.

///

32. On May 7, 2025, I responded to PKS Law Group's letter with the additional information requested including a verification of my disability provided by my sister.

33. I received no other communication from PKS Law Group until I received a letter dated May 16, 2025, indicating that Lakeside Village Apartments had denied my reasonable accommodation/modification request asserting that it was a fundamental alteration of their services and in potential violation of local regulations. PKS Law Group asserted and/or cited another city department had informed PKS Law Group that my reasonable modification request violated local regulations. However, defendants have yet to provide me with any such communications that indicate that this is the case.

34. After the May 16, 2025 letter from PKS Law Group, I submitted a public records request to the City of Marysville to gather additional information about the alleged violation of local regulations. The City of Marysville informed me that the alleged violation of local regulations was false. Defendants had intentionally been deceptive about the potential local regulation violation to deny me of my civil rights as a tenant entitled to reasonable accommodation/modification.

35. On May 28, 2025, within 180 days of exercising my rights as a tenant by requesting a reasonable accommodation/modification, I was issued a retaliatory rent increase in the amount of $25.00.

36. Nearly seven months after my first oral request for a reasonable accommodation/modification, on June 3, 2025, I sent a follow up letter and email to PKS Law Group to reiterate my request for reasonable accommodation/modification. I again informed them that I was frustrated with the delay and reiterated the nexus between my request and my disability.

37. Nearly eight months after my first oral request for reasonable accommodation/ modification, on July 13, 2025, I sent another follow up email because I did not receive a response to my June 3, 2025, email and letter. In my follow up email, I informed PKS Law Group that I had an alternative I would like to propose, which was to utilize temporary fencing materials to allow the

necessary physical separation to accommodate my disabilities but would not be a permanent fixture or alteration to the existing structure.

38. PKS Law Group sent a letter via e-mail on July 11, 2025. I received the physical letter from PKS Law Group's letter on July 15, 2025.

39. In the July 11 letter, PKS Law Group deceptively, and intentionally, misrepresented that installing the fence would violate local regulations and reiterated that I would not be able to install any form of fencing because it would be considered an encroachment to the common area and is against municipal and legal guidance. Thereafter, PKS Law Group heartlessly informed me that I should consider transferring units away from the lake and that I would still not be allowed to install any fencing around any transfer unit. I enjoyed the lake, which was not a problem and engaging in musical units was not necessary or an alternative to my simple reasonable accommodation/modification request for a temporary garden fence bordering the buffer zone.

40. On July 16, 2025, PKS Law Group acknowledged that they had received my July 3rd e-mail. I followed up again on July 28, 2025, via email to provide PKS Law Group with additional information for consideration and again reiterated the impacts of the denial and failure to engage in a good faith interactive process was adversely affecting my mental health.

41. Nearly nine months after my first oral request for a reasonable accommodation/modification, on August 8, 2025, I sent another email to PKS Law Group and asked them to respond by August 18, 2025, or I would consider their lack of response an official denial of my reasonable accommodation/modification request.

42. Nearly 10 (ten) months after my first oral request for a reasonable accommodation/modification, on September 8, 2025, I followed up again with PKS Law Group when I did not hear from defendants by August 18, 2025, in response to my August 8, 2025 follow-up letter.

43. On November 16, 2025, in response to my September 8, 2025 follow-up letter, defendants' attorney PKS Law Group served me with a "Three (3) Day Notice to Permanently Perform or Quit ("Notice")". Basically, or be evicted.

44. The Notice falsely accused me of breaching the lease agreement for landscaping the buffer zone and having my service dogs on a leash in the buffer zone. The buffer zone was also where I submitted a request for reasonable accommodation/modification for the temporary fencing to be placed. Despite giving me permission to landscape the buffer zone in 2023 and complimenting me on the landscaping, defendants' Notice was harassingly demanding that I undo the landscaping in the buffer zone located between my patio and the community thoroughfare/causeway. It was very disheartening. I had, with the assistance of defendants' maintenance crew, created a beautiful and peaceful landscaped buffer zone, where large overgrown bushes previously existed. Sadly, defendants' Notice further demanded that I remove the outdoor bench and sun umbrella I had purchased to sit and enjoy my outdoor surroundings while watching my leashed service dogs do the same. Defendants' Notice demands expressed no consideration of my disability or my financial loss to landscape the buffer zone that posed no encroachment or breached any rental agreements in the lease agreement. Defendants had given me permission and maintenance personnel assistance me in landscaping that buffer zone in 2023 and was now harassing me about it in retaliation for expressing by civil right to request and receive reasonable accommodation/modification in 2024/2025.

45. On November 17, 2025, I e-mailed PKS Law Group requesting that I be accommodated with maintenance assistance to undo the landscaping as the defendants' Notice demanded. It would be very difficult for me to comply with the 3-day notice in three days especially since I am disabled and heartbroken by the destruction of the landscaping, that took me some time and labor to create in the buffer zone with the permission and assistance of the community manager and maintenance personnel. It was created to specifically protect me from rain flooded paths and walkways as well as the dangerous rays of the sun in their seasons. Defendants' "Three (3) Day Notice…" is nothing more than unlawful harassment and retaliation for exercising my civil rights for reasonable accommodation/modification to secure a safe, healthy, sanitized, and peaceful tenancy. Defendants' Notice was threatening to evict me from my home unless I, in three days accomplished the following:

    a. "Cease from placing patio furniture and umbrellas in the common area of the Community."

    b. "Cease from placing and installing bark and decorative rocks in the common area of the community."

    c. "Immediately remove all bark and decorative rocks and personal property from the common areas of the Community."

    d. "Cease from altering, modifying or decorating the common areas of the Community without prior written authorization from Management."

"OR you must deliver possession of the leased premises to the Owner or Owner's Agent."

46. Defendants have conjured up false grounds disguised as a breach of the lease agreement to undermine my civil rights by forcing me to choose between dropping my pursuit for reasonable accommodation/modification or becoming homeless.

47. Defendants demanded that I remove all basic landscaping items put into place to manage flooding waters in my walkways and to protect me from the damaging rays of direct sunlight alleging that such landscaping is in breach of the lease agreement and unauthorized. Such allegation is a negligent, deceptive, and fraudulent misrepresentation of the material facts.

48. Since moving into Lakeside Village Apartments, I have suffered injuries from slipping and falling from extreme muddy grounds in and around my apartment during the rainy season and extreme discomfort from sitting in direct sunlight. Now defendants were denying me the protection benefits of an outdoor umbrella from the rays of the sun and a safe walkway in rainy seasons. It brought me much peace and joy to be able to safely enjoy the outdoors in the rear of my apartment on my park bench beneath my umbrella in the flood-proof buffer zone watching my service animals also enjoy the outdoors space under my watchful while on their leash.

49. On November 18, 2025, I submitted a request for reasonable accommodation/modification requesting that the community river rock, mulch, and umbrella remain in the buffer zone for my continued protection from sustaining injury from flooded walkways and direct sunlight. I did not place any decorative rocks in the buffer zone. The rocks in the zone are

river rocks that I gathered from the surrounding grounds placed throughout the community by defendants. I received implied permission from management and assistance from maintenance personnel in placing the river rock, mulch, park bench, and umbrella in the buffer zone, which has been in place for some time now. Landscaping the buffer zone was not a breach of my lease and requesting a garden fence to be placed around the buffer zone is not an encroachment or a potential violation of city regulations.

50. As of the date of filing this complaint, there has been no resolution. I have been denied reasonable accommodation/modification without relief or legal cause for over nine months. I have been in a deceptive, harassing, disingenuous, and retaliatory interaction process with defendants for an unlawful amount of time. Defendants' unlawful behavior has denied me peace of mind continually interrupting my peaceful and secure environment causing me physical, mental, and emotional harm in violation of the law.

51. I believe that Lakeside Apartment's failure to participate in what is supposed to be a truly interactive process violates the Fair Housing laws. Me installing temporary fencing to an external area of the unit where I currently reside does not harm Lakeside Village Apartments, is not in violation of local ordinances, and the proposed reasonable accommodation/modification would allow me an equal opportunity to live in my home without worsening my disabilities.

52. Instead of meeting with me, communicating with me in a sincere, honest and timely manner to address my needs as a disabled tenant, Lakeside Village Apartments and WestCal Management have denied my reasonable accommodation/modification request, have failed to engage in a timely interactive process in good faith, and retaliated against me for exercising my civil rights to be reasonably accommodated because of my disability.

53. On information and belief, I, Romona Janine Wafer, alleges that Chloe Wilkinson, acting on behalf of WestCal, Lakeside Village Apartments, LLC, and LA PALOMA APARTMENTS LLC, a California limited liability company, JMAKK Lakeside LLC, a California limited liability company, and MDH Lakeside LLC (collectively referred to as "OWNERS"), owner of Lakeside Village Apartments located at 1701 Ellis Lake Drive, Marysville, California 95901,

a. unlawfully denied my reasonable accommodation/modification request for a temporary garden fence,

b. failed to engage in a lawful and timely interactive process in good faith,

c. submitted a false modification request to local municipalities to deceive them into believing that my reasonable modification was, thereafter, reported as a building code restriction or violation of local regulations,

d. falsely claimed that there existed a legitimate building code restriction prohibiting Lakeside Village Apartments from proceeding with my reasonable accommodation/modification request,

e. falsely claimed that my reasonable accommodation/modification request was a potential violation of local regulations,

f. falsely claimed that my reasonable accommodation/modification request was a fundamental alteration of their services, an intentional misrepresentation of the truth.

g. falsely claimed that my reasonable accommodation/modification request was considered an encroachment to the common area and was against municipal and legal guidance,

h. failed to engage in good faith in the interactive process which has and continues to have a debilitating impact on my physical, mental, and emotional health;

i. retaliated against me by imposing a rent increase of $25.00 within 180 days of my exercising my rights as a tenant requesting a reasonable modification.

j. retaliated against me by serving me a "Three (3) Day Notice to Permanently Perform or Quit, within 30 days of my final follow-up to grant me resolution, demanding I undo the two-year old landscaping in the buffer zone or be evicted.

k. mocked my request for reasonable accommodation/modification heartlessly suggesting that I consider transferring units away from the lake and that such

   transfer still would not provide me with the reasonable modification I requested to enjoy and feel safe in my apartment.

 l. discriminated against me because I suffered and still suffer from disabilities whereby, I was and still am vulnerable to defendants' acts of disability discrimination and retaliation.

 m. has misused and abused the interactive process for more than nine months deliberately delaying a lawful timely resolution to my oral reasonable accommodation/modification request of November of 2024.

 n. has misused and abused the interactive process for more than nine months deliberately delaying a lawful timely resolution to my written reasonable accommodation/modification request dated February 7, 2025.

## V. CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

### [California Unruh Act] Cal. Civil Code § 51 et seq.

54. Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

55. By conduct alleged herein, Defendants, a California business establishment leasing of dwellings, intentionally engaged in unlawful discrimination based on disability, race, request for reasonable accommodation/modification, and retaliation for exercising civil rights that denied Plaintiff the full and equal enjoyment of Defendants' accommodations, advantages, facilities, privileges, or services in violation of federal and state fair housing laws.

56. Accordingly, I, Romona Janine Wafer, is the plaintiff who has directly experienced a denial of rights because of my membership in a protected class as defined by Civil Code Sections 51 and 52, entitling me to relief including general and special compensatory damages and punitive damages, up to a maximum of treble damages but in no case less than four thousand dollars as set forth in Civil Code Section 52, as well as declaratory and injunctive relief.

///

## SECOND CLAIM FOR RELIEF

**[California Fair Employment and Housing Act] Cal. Gov't Code § 12927 et seq.**

57. I, Plaintiff realleges and incorporates by reference herein the allegations contained in each preceding paragraph as if set forth here in full.

58. By the conduct alleged herein, Defendants injured Plaintiff by committing one or more of the following unlawful housing practices:

   a. Engaging in discrimination on the basis of disability, race, request for reasonable accommodation/modification, and retaliation for exercising civil rights in violation of Cal. Govt. Code §§12927(c)(1) and 12955(a), including refusal to make reasonable accommodations.

   b. Violating the Unruh Civil Rights Act in violation of aba 12955(d);

   c. Retaliating in violation of aba12955(f);

   d. Aiding, abetting, compelling another to commit violations of Fair Employment and Housing Act in violation of Cal. Gov't Code §12955(g);

   e. Discriminating because of race and disability in violation of Cal. Gov't Code §12955(i);

   f. Making unavailable housing opportunities because of race and disability in violation of Cal. Gov't Code §12955(k);

   g. Discriminating through private land use practices, decisions, and authorizations because of disability, race, request for reasonable accommodation/modification, and retaliation for exercising civil rights in violation of Cal. Gov't Code §12955(l);

   h. Interfering with the exercise of rights under the Fair Employment and Housing Act in violation of §12955.7; and

   i. Making negligent and fraudulent statements to me, Plaintiff, with the intent to deceive while denying me, Plaintiff of my civil rights in violation of Cal. Civ. Code, § 1710(2).

59. As a result of Defendants' unlawful discriminatory conduct, I, Plaintiff, am an "aggrieved person" as defined in Cal. Gov't Code § 12989.1 and therefore entitled to relief under Gov't Code § 12989.2.

### THIRD CLAIM FOR RELIEF
### [Breach of Duty] Cal. Civ. Code § 1714

60. I, Plaintiff, realleges and incorporates by reference each preceding paragraph herein.

61. Defendants are directly and vicariously liable for breaching their duties of care, including statutory and contractual obligations, in the ownership, operation and management of defendant Lakeside Village Apartments in violation of Cal. Civ. Code § 1714; owned and operated by defendants LA PALOMA APARTMENTS LLC, a California limited liability company, JMAKK Lakeside LLC, a California limited liability company, and MDH Lakeside LLC (collectively referred to as "OWNERS"), and WestCal Management respectively, and Defendant Chloe Wilkinson, Regional Manager employed by WestCal Management.

62. I, Plaintiff, was injured by these defendants' breach of duty. Accordingly, I am an aggrieved person entitled to relief under Cal. Civ. Code §§ 3281 and 3333.

### FOURTH CLAIM FOR RELIEF
### [Negligent Misrepresentation] Cal. Civ. Code § 1710(2)

63. I, Plaintiff realleges and incorporates by reference each preceding paragraph herein.

64. Defendants are directly and vicariously liable to me for making false representations of material facts as grounds to discriminate against me and deny me reasonable accommodation/modifications in direct violation of Cal. Civ. Code, § 1710(2).

65. Defendants are directly and vicariously liable to me for fraudulent misrepresentation, in contrast, knowingly making false statements with the intent to deceive me in violation of Cal. Civ. Code, § 1710(2).

66. I, Plaintiff, was injured by these defendants' blatant disregard of the law to deny me my civil rights for a reasonable accommodation/modification without lawful grounds. Accordingly, I am an aggrieved person entitled to the relief under Cal. Civ. Code of §§ 3281 and 3333.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays that the Court enter an ORDER:

67. Declaring that the misconduct alleged herein violates California's Fair Employment and Housing Act; California's Unruh Act; ADA, Cal. Civil Code re "Breach of Duty", and California's Civil Code re "Negligent Misrepresentation".

68. Enjoining Defendants, their agents, employees, successors, and all other persons in Active Concert or participation from discriminating against any person because of race and disability and request for reasonable accommodation/modification retaliation in violation of the Fair Housing Act, California Unruh Civil Rights Act, and the California Fair Employment and Housing Act;

69. Ordering Defendants to take such actions as may be necessary to prevent the recurrence of any discriminatory and/or retaliatory conduct in the future and to eliminate, to the extent practicable, the effects of their unlawful conduct, including implementing policies and procedures to ensure that no applicants and/or tenants are discriminated against because of race and disability, reasonable accommodations and retaliation.

70. Awarding compensatory damages to Plaintiff, according to proof,

71. Awarding punitive damages to Plaintiff, according to proof,

72. Awarding statutory damages to Plaintiff pursuant to Cal. Civ. Code §§ 52(a) and Civ. Code § 3345,

///

73. Awarding attorneys' fees and costs; and,

74. Ordering such additional relief as the interests of justice may require.

Dated: November 19, 2025

Respectfully submitted,

*[signature]*

ROMONA JANINE WAFER,
Pro Se Litigator